**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANDALEX RESOURCES, INC.,

      Petitioner,

v.

                       No. 14-9540

MINE SAFETY AND HEALTH
ADMINISTRATION; JOSEPH A. MAIN,
Assistant Secretary of Labor for Mine
Safety and Health,

      Respondents.

---

**PETITIONS FOR REVIEW OF FINAL DECISIONS**
**OF THE MINE SAFETY AND HEALTH ADMINISTRATION**
**Nos. 2009-MSA-00002, 2009-MSA-00003**

---

Marco M. Rajkovich, Jr., Rajkovich, Williams, Kilpatrick & True, PLLC, Lexington, Kentucky, for Petitioner.

Lynne B. Dunbar, Attorney, U.S. Department of Labor, Office of the Solicitor (M. Patricia Smith, Solicitor of Labor; Heidi W. Strassler, Associate Solicitor; and W. Christian Schumann, Counsel, Appellate Litigation, with her on the brief), Arlington, Virginia, for Respondents.

---

Before **KELLY**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

---

**PHILLIPS,** Circuit Judge.

---

Andalex Resources, Inc.[1] petitions for review of the Mine Safety and Health Administration's (MSHA) decision to revoke previously granted modifications to the application of certain mine safety regulations. Andalex contends that MSHA lacked substantial evidence to revoke the modifications and that MSHA abused its discretion in how it applied the standard for revocation. We discern no error in the agency's decision. Exercising jurisdiction under 30 U.S.C. § 811(d), we deny the petitions for review.

BACKGROUND

A.  **Underground mine safety regulations and Andalex's modifications**

Underground coal mines present dangers to mine workers, nearby residents, and the environment. To minimize that danger, Congress created MSHA and authorized the MSHA Secretary to promulgate rules mandating health and safety standards for mines and mine workers. 30 U.S.C. § 811(a). Some of those rules are relevant in this case.

First, underground mines must have at least one sprinkler above certain pieces of equipment, including conveyor belts. 30 C.F.R. § 75.1101-8(a). Sprinklers generally must be installed at intervals less than eight feet along all conveyor lines, *id.*, and must discharge at least 0.25 gallons of water per minute, with a sufficient reserve of water to provide a constant flow for at least ten minutes. *Id.* § 75.1101-8(c).

Second, MSHA generally prohibits the use of a belt air course as a return air course. That means mine operators cannot bring air into the mines using the same tunnels that

---

[1] Before the Administrative Law Judge, another company, UtahAmerican Energy, Inc., stated that it was Andalex's successor-in-interest. For clarity, we refer to the mine operator and petitioner as Andalex.

take coal out of the mines on conveyor belts. *Id.* § 75.350(a). MSHA permits this only if the mine operator shows that using belt air would protect air quality as much as other possible ventilation sources. *Id.* § 75.350(b). The mine operator must also use an Atmospheric Monitoring System that will alert workers when the air quality dips below a specific level. *Id* § 75.350(b)(1).

Third, MSHA regulates the Atmospheric Monitoring System for malfunctions, alerts, and alarm signals. When air quality decreases to an unacceptable level, the system operator must notify investigative personnel so they can identify which system sensor has alerted and why. *Id.* §75.352(a)–(b). If two or more sensors alert, then miners must almost always evacuate. *Id.* § 75.352(c).

Fourth, MSHA regulates diesel-powered equipment used in the mines. Although MSHA initially deems some diesel equipment "non-permissible," it still allows its use if mine operators use an approved engine with an air filter, include an approved fire extinguisher, and comply with specific fuel-system specifications, among other requirements. *Id.* §§ 75.1907, 75.1909(a). If the non-permissible equipment is self-propelled, the mine operator must fit that equipment with a supplemental braking system that engages automatically within five seconds after the engine shuts off and that includes a fully manual control. *Id.* § 75.1909(c).

Fifth, MSHA regulates the installation and use of electric equipment close to pillar workings or longwall faces—areas in which miners extract coal. Mine operators must use, among other things, shielded high-voltage cables and conductors and cables of

intrinsically safe circuits when they use electricity within 150 feet of a pillar or longwall face. *Id.* § 75.1002.

Finally, MSHA regulates other electronic equipment used in underground mines. This equipment includes junction boxes used for multiple power connections, handheld electric drills, and equipment that "is taken into or used inby the last open crosscut of any coal mine . . . ."[2] *Id.* § 75.500.

## B.  Modification of safety standards

Congress has granted the MSHA Secretary authority to modify the application of safety standards on a case-by-case basis. MSHA may modify the safety standards when the Secretary determines that a mine operator's proposed alternative safety standard will, at all times, guarantee no less than the same measure of protection than the regulations would otherwise require. 30 U.S.C. § 811(c). To request a modification, the mine operator (or a representative from that mine) must present a written petition for modification to the MSHA Director of the Office of Standards. 30 C.F.R. § 44.10. After MSHA investigates the petition, the appropriate MSHA administrator issues a proposed decision, which becomes final 30 days later unless there is a request for a hearing. *Id.* § 44.13(b).

MSHA also has the authority to revoke those granted modifications. Any party to the initial petition for modification may request a revocation. *Id.* § 44.52(a). To revoke a granted modification, a MSHA administrator must issue a proposed decision of

---

[2] "Inby" refers to something facing the direction of the coal face. Conversely, "outby" refers to the direction facing the mine entrance (the surface).

revocation, which becomes final unless a party requests a hearing within 30 days. *Id.* § 44.52(b). In any event, "[r]evocation of a granted modification must be based upon a change of circumstances or because findings which originally supported the modification are no longer valid." *Id.* § 44.52(c).

A mine operator that has a modification revoked may appeal the MSHA Administrator's proposed decision to an Administrative Law Judge (ALJ). In addition, an operator may appeal an ALJ's adverse decision to the MSHA Assistant Secretary. *See id.* § 44.50. Finally, an operator may seek judicial review of an adverse decision by the Assistant Secretary. *See id.* § 44.51.

## C. Andalex's mines and modifications

Andalex ran, among others, two underground coal mines in Utah—Pinnacle Mine and Aberdeen Mine. Between 1991 and 2006, Andalex sought, and MSHA approved, various modifications under the aforementioned regulations. First, in 1991, MSHA granted a modification to Andalex allowing it to place sprinklers in the two mines ten feet apart from one another instead of eight. *See* 30 C.F.R. § 75.1101-8(a). Second, in 1996, MSHA allowed Andalex to use the belt entry as an intake-air course to provide underground ventilation. *See id.* § 75.350(b). To implement this modification, Andalex had to satisfy various stipulations, including installing systems to monitor atmospheric quality, carbon monoxide, and methane. Third, also in 1996, MSHA approved Andalex's proposed modification concerning the Atmospheric Monitoring System that Andalex had to use in conjunction with its belt air course ventilation modification. *See id.* § 75.352. Andalex could use a conveyor belt in a return air course while it developed a two-entry mining

system for the two mines. Fourth, in 2001, MSHA permitted Andalex to place a speed governor on its graders (instead of a supplemental braking system) that would limit the maximum speed to ten miles per hour. *See id.* § 75.1909(c). Additionally, Andalex had to train its grader operators to lower the grader blade in emergencies to provide greater stopping capability. Fifth, in 2005, Andalex secured a modification that allowed it to use electric equipment within 150 feet of the mines' longwall coal faces. *See id.* § 75.1002. Specifically, Andalex could use certain low-voltage diagnostic testing equipment, but only if it also continuously monitored for methane during any use of that equipment. Finally, in 2005, MSHA granted Andalex a modification that permitted Andalex to use other electronic testing equipment within 150 feet of the mines' longwall coal faces. *See id.* § 75.500.

## D. MSHA's revocations and decisions

In 2008, Andalex ceased mining and sealed the Pinnacle and Aberdeen mines. Although it sealed the mines, Andalex left some infrastructure in place, presumably so it could one day reopen the mines. MSHA regulates the sealing of mines, requiring sealing whenever the mine operator deems the mine inactive or permanently closed or when the operator has abandoned a mine for more than 90 days. 30 C.F.R. § 75.1711. When it sealed the mines, Andalex complied with one of MSHA's regulations requiring the operator to submit updated maps with notations that it had sealed all openings to the underground mines. *See id.* § 75.1204.

After Andalex sealed the two mines, MSHA issued a proposed decision revoking the six modifications it had previously granted to Andalex. When Andalex sealed the two

mines, MSHA declared the Pinnacle Mine "[non-producing]" and the Aberdeen Mine "[a]bandoned." Pet'r's App. at 53. MSHA considered Andalex's sealing of the two mines a change of circumstances, allowing revocation under 30 C.F.R. § 44.52(c). Andalex disagreed, sought a hearing with an ALJ, and moved for a summary decision under 30 C.F.R. § 44.40. It argued that revocation was improper under § 44.52(c) because MSHA had not demonstrated a change of circumstances or shown that any of the findings MSHA had made in granting the modifications were now invalid. Andalex also contended that, contrary to MSHA's classifications, it was merely maintaining the two mines in a "*temporary idle status*" and intended to resume operations in the future. Pet'r's App. at 58–59 (emphasis in original).

In evaluating MSHA's proposed decision to revoke, the ALJ cited and relied upon a 2008 MSHA handbook because he had no statute, regulation, or case to follow. The handbook included a list of possible reasons for MSHA administrators to consider revoking modifications, including: (1) the operator fails to implement the modification; (2) the findings and conditions that justified the modification have changed such that the modification is no longer warranted; and (3) the operator no longer uses or travels in the area of the mine to which the modification applies. Pet'r's App. at 81. The ALJ also noted a statement in the handbook that "if a mine is permanently abandoned, the district [court] should . . . recommend that modifications previously granted at the mines be revoked." *Id.*

The ALJ affirmed MSHA's decision to revoke the modifications.[3] The ALJ first discussed the standard for revocation, 30 C.F.R. § 44.52(c). Before addressing revocation, the ALJ decided that the two mines were not "abandoned" and found, in part, that Andalex had left equipment in the mines and asserted that it needed more land to support the two mines. But the ALJ also noted that five years had elapsed since Andalex ceased mining operations, and he did not expect MSHA to "sit around for years waiting under the possibility that a miner operator may reopen a mine. . . ." Pet'r's App. at 78, 78–79 (internal quotation marks omitted). The ALJ worried that if (or when) Andalex reopened the mines, the mines' depth, layout, and grade all could have changed. The ALJ also expressed concern that Andalex could start up its equipment (some of which was vital to ensuring miner safety) without any recent inspections or monitoring. Accordingly, the ALJ decided that MSHA "must be afforded the opportunity to consider mining conditions at the time that the mines are reopened and available for inspections and monitoring." Pet'r's App. at 84. Ultimately, the ALJ determined that circumstances in the mines had changed with their closure and sealing, thus warranting the revocations.

Andalex appealed the ALJ's decision to the MSHA Assistant Secretary. The Assistant Secretary affirmed the ALJ. Using 30 C.F.R. § 44.52(c) as the standard, the Assistant Secretary concluded that changed circumstances—the cessation of active mining—warranted the revocations. The Assistant Secretary expressed concern that, with the passage of time and potential for new technologies, there was:

---

[3] The ALJ waited nearly three years to issue a decision because MSHA and Andalex worked (unsuccessfully) to reach a settlement agreement.

no way to verify that mining conditions that were present at one time at the mine will be present when the mine becomes active—particularly when the mine has been inactive for more than five years and when the operator has made representations indicating that new mining systems and technologies may be used when mining resumes. . . .

Pet'r's App. at 96–97.

The Assistant Secretary rejected Andalex's argument that the ALJ erred by revoking the modifications based on the possibility of changed circumstances. Instead, he concluded that Andalex's inability to maintain the equipment it left in the sealed mines was itself a change in circumstances that supported revocation. The Assistant Secretary also noted that significant time had elapsed during which MSHA had been unable to inspect the mines and equipment. The Assistant Secretary also rejected Andalex's argument that granting a revocation here would allow MSHA to revoke modifications whenever an operator temporarily idled a mine or even shut down a mine for a vacation or weekend. Andalex timely filed its petition for review.

## DISCUSSION

### A. Standard of Review

A "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence. . . ." 5 U.S.C. § 706. For the arbitrary and capricious standard, we must engage in a "substantial inquiry." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)) (internal quotation marks omitted). Yet our scope of review is narrow. *Id.* at 1576. Our duty is to ascertain "whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Id.* at 1574.

To satisfy the substantial evidence standard, an agency need only rely on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)) (internal quotation marks omitted). The standard "requires more than a scintilla, but less than a preponderance." *Id.* We "neither reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)) (internal quotation marks omitted).

Ultimately, our review is "very deferential to the agency." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1161 (10th Cir. 2014) (quoting *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012)) (internal quotation marks omitted). Further, "[a] presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge it." *Id.* at 1162 (alteration in original) (quoting *Hillsdale Envtl.*, 702 F.3d at 1165) (internal quotation marks omitted).

**B. Did MSHA abuse its discretion or act arbitrarily and capriciously?**

Andalex argues that the Assistant Secretary abused his discretion by ignoring, or alternatively, by misapplying the standard for revocation stated in 30 C.F.R. § 44.52(c).

Andalex also argues that the Assistant Secretary abused his discretion by simply speculating on future conditions in the mines. In response, MSHA contends that the Assistant Secretary and the ALJ properly applied the revocation standard and correctly found a change in circumstances—the closing of the mines and the long-term idling of equipment.

MSHA can revoke a previously granted modification "upon a change in circumstances or because findings which originally supported the modification are no longer valid." 30 C.F.R. § 44.52(c). To determine whether a change in circumstances supported revocation, MSHA looked to the factors regarding changes in circumstances listed in its own handbook. Two factors upon which the ALJ and Assistant Secretary relied are particularly germane here: the mine or affected area is abandoned, and the operator no longer uses or travels in the area of the mine to which the modification applies.

Here, Andalex faces a problem: deference. Andalex did not mention this, perhaps for good reason. "We must be mindful that under the arbitrary and capricious standard, 'our deference to the agency is greatest when reviewing technical matters within its area of expertise. . . .'" *Colo. Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1215–16 (10th Cir. 2006) (quoting *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 329 (5th Cir. 1988)). To sustain an agency action as not being arbitrary and capricious, there must be a "reasoned basis" and facts in the record to support the agency's action. *Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

- 11 -

Regarding MSHA's application of the factors in its handbook, "we ordinarily defer to an agency's own interpretation of an ambiguous statute that it implements[.]" *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1272 (10th Cir. 2007) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). But this deference is not absolute: we do not accord the highest *Chevron* deference to agency interpretations contained in agency handbooks. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Nevertheless, we still afford MSHA's handbook "great deference." *Newton v. Fed. Aviation Admin.*, 457 F.3d 1133, 1137 (10th Cir. 2006) (stating that an agency handbook is entitled to "great deference insofar as it is interpreting the agency's own regulations").

Affording "great deference" to MSHA's use of the handbook factors, we reject Andalex's argument that the agency's decision was arbitrary and capricious. In support of that argument, Andalex argues that the Assistant Secretary misapplied or ignored the § 44.52(c) standard. But Andalex does not contest that, in September 2008, it sealed the two mines and ended active underground mining. When the agency decided to revoke the modifications, Andalex had not submitted any plans to MSHA to reopen the two underground mines (and nor has it now). Andalex's ceasing underground mining meant, and still means, that "[t]he area of the mine to which the modification applies is no longer used or traveled. . . ." Agency R., Tab 12 at 12 (ALJ's Decision); Tab 18 at 10 (Assistant Secretary's Decision). This was a "reasoned basis" upon which MSHA could rely to revoke the modifications. *See Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

The plain language of "change in circumstances" supports MSHA's decision to revoke the modifications. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("[W]e must defer to the [agency's] interpretation unless an 'alternative reading is compelled by the regulation's plain language. . . .'" (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988))). MSHA did not act arbitrarily and capriciously in concluding that ending underground mining warranted revocation of the modifications. *See Change Definition*, Oxford English Dictionary Online, http://www.oed.com/view/Entry/30467 (last visited May 18, 2015) (defining "change" as, among other things, "substitution of one thing for another," "succession of one thing in place of another," and "alteration in the state or quality of anything"); *Circumstance Definition*, Oxford English Dictionary Online, http://www.oed.com/view/Entry/33377 (last visited May 18, 2015) (defining "circumstance" as, among other things, "a detail").

Andalex also argues that it was arbitrary and capricious for MSHA to revoke the modifications without first inspecting the mines and equipment. According to Andalex, the agency's failure to inspect anything led to the Assistant Secretary's revoking the modifications without making any findings and instead relying on "*unproven assumptions*." Petitioner's Br. at 11 (emphasis in original). This argument lacks merit. The Assistant Secretary's findings came from Andalex's own admissions. The Assistant Secretary found that a change in circumstances supported the revocation—primarily, Andalex's sealing the mines and stopping active mining. The Assistant Secretary also found that Andalex's inability to maintain the equipment it left inside the sealed mines constituted a change in circumstances. These findings have a "rational connection" to the

- 13 -

decision to revoke the modifications, all of which contemplated active mining. *See Olenhouse*, 42 F.3d at 1574 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

Similarly, Andalex asserts that the Assistant Secretary based his decision not on fact, but conjecture, and that his decision to affirm the revocations amounted to "administrative fiat." Petitioner's Br. at 11. Specifically, Andalex contends that the Assistant Secretary arbitrarily and capriciously agreed with the ALJ's statement that "the extended period of inactivity and inaccessibility raises concerns as to the condition of equipment and infrastructure left in the mines." Pet'r's App. at 96. According to Andalex, the Assistant Secretary cannot just "raise concerns" and speculate on what "may be in place" in the future. Petitioner's Br. at 11.

Certainly, the Assistant Secretary raised a lot of concerns and speculated more than once about what may happen if Andalex tries to resume mining in the underground mines. And, as Andalex tells us, the Assistant Secretary admitted that MSHA "should not grant a petition for modification when the mine is sealed and there is no way to verify that mining conditions that were present at one time at the mine will be present when the mine becomes active." Pet'r's App. at 96. But before that discussion, the Assistant Secretary reached a clear conclusion: "[t]he granted modifications all contemplate active mining and modify standards . . . that are critically important to miner safety."[4] Pet'r's App. at 95.

---

[4] In its reply brief, Andalex argues that MSHA's revocations are arbitrary and capricious because the revocations will diminish miner safety. Normally we do not consider arguments raised for the first time in a reply brief. *See WildEarth Guardians v. U.S. E.P.A.*, 770 F.3d 919, 933 (10th Cir. 2014). In any event, we reject Andalex's

- 14 -

Andalex urges us against allowing the agency to apply such broad pronouncements as changes in circumstances. We disagree. The sealing of the mines is a discrete and substantial event. MSHA's regulations say as much; for example, when a mine operator declares a coal mine inactive or abandons a mine, the operator must seal the mine entrances according to MSHA regulations. *See* 30 C.F.R. § 75.1711. MSHA also requires operators to submit updated maps showing that the operator has sealed the entrances. *See id.* § 75.1204. These regulations treat the sealing of mine entrances as a significant event, one that justifies a finding of a change in circumstances under § 44.52(c). In short, we cannot say that MSHA acted arbitrarily and capriciously in relying on the sealing of the mines as a change in circumstances.

## C. Did substantial evidence support MSHA's decision to revoke the modifications?

Andalex also contends that the Assistant Secretary "points to no *facts*" that would permit the agency to prove a change in circumstances. Petitioner's Br. at 14 (emphasis in original). MSHA disagrees and argues that substantial evidence existed to support its decision. MSHA notes that Andalex stopped underground mining in the two mines, and each of the previously granted modifications contemplated active mining.

---

argument. If Andalex reopens the mines, it will still have to comply with all of the mandatory regulations MSHA has promulgated until it once again seeks modification of the standards. *See* 30 U.S.C. § 811(c). Section 811(c) permits modification if "the Secretary determines that an alternative method of achieving the result of such [safety] standard exists which will *at all times guarantee* no less than the same measure of protection afforded the miners of such mine by such standard . . . ." (emphasis added). With Andalex's sealing of the mines, it was well within MSHA's discretion to conclude that Andalex's modifications could no longer guarantee at all times that baseline safety standard. *See* 30 C.F.R. § 44.1(b) (permitting MSHA to liberally construe the modification rules to ensure adequate protection of miners).

- 15 -

To determine if substantial evidence existed, we consider whether the agency's decision is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991) (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)) (internal quotation marks omitted). "This is something more than a mere scintilla but something less than the weight of the evidence." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Substantial evidence supported MSHA's decision to revoke Andalex's modifications. Before the ALJ, Andalex admitted that it had sealed the mines in September 2008. Andalex took the further step of submitting updated mine maps to MSHA as regulations require when an operator permanently closes, abandons, or closes a mine for more than 90 days. *See* 30 C.F.R. § 75.1204. Andalex admitted that it has not undertaken any mining in the two mines since it sealed them. Although Andalex left some infrastructure and equipment (that has now sat unused for several years) underground in the two mines, it admitted that it had submitted no plans to MSHA to reopen the mines or resume active mining.

Andalex suggests that this is insufficient to satisfy the substantial evidence standard; in its view, MSHA needed to show that the conditions relevant to the modifications at issue had changed. We disagree. Under 30 C.F.R. § 44.52(c), to revoke a modification, the agency must find a change in circumstances *or* determine that findings "which originally supported the modification are no longer valid." MSHA need show only something "more than a mere scintilla" of changed circumstances. *See Foust*, 942 F.2d at

- 16 -

714. MSHA did just that. In his decision, the Assistant Secretary noted that "[i]n any event, the mining conditions are different in that there are no mining conditions" and that "[t]here has been no active mining for more than five years." Agency R., Tab 18, at 11 n.6. The Assistant Secretary also found a change in circumstances based on Andalex's inability to maintain the mining equipment it left in the now-sealed mines. We conclude that MSHA met the substantial evidence standard necessary to revoke the modifications.[5]

Finally, we agree with both the ALJ and the Assistant Secretary that, if Andalex reopens the mines, it may again petition MSHA for modification of the standards. If that occurs, we also agree that MSHA should expedite consideration of those petitions and whether current conditions warrant those modifications.

CONCLUSION

Andalex sealed two underground mines and has left them sealed for several years. Affording deference to the agency's actions, we hold that MSHA did not act arbitrarily and capriciously in revoking its previously granted modifications for those two mines. We also hold that MSHA supported its decision with substantial evidence. Therefore, we deny the petitions for review.

---

[5] In its reply brief, Andalex contends that the "far better solution" would be for MSHA to revoke the modifications after Andalex elects to reopen the two mines and resume operations. Pet'r's Rep. Br. at 6–7. Andalex notes that it cannot resume mining until MSHA completes an inspection of the entire mine, see 30 C.F.R. § 75.373, at which time MSHA can then revoke the modifications on an informed basis. Even if MSHA must inspect the mines before permitting an operator to resume active underground mining, § 44.52 only requires the agency to find a change in circumstances or to conclude that "findings which originally supported the modification are no longer valid." The regulations do not require MSHA to wait for an operator to reopen an indefinitely sealed mine before it pursues revocation of previously granted modifications.