FILED
United States Court of Appeals
Tenth Circuit

March 9, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KP TRUCKING LLC,

    Petitioner,

v.

UNITED STATES DEPARTMENT
OF TRANSPORTATION; FEDERAL
MOTOR CARRIER SAFETY
ADMINISTRATION (FMCSA),

    Respondents.

No. 20-9508
(FMCS No. 0258)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and
**PHILLIPS**, Circuit Judge.
_____

This case involves administrative regulation of the trucking industry.

Under these regulations, safety violations by two companies can be

---

[*] The parties have waived oral argument, and it would not materially help us to decide the petition for review. _See_ Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). So we have decided the petition for judicial review based on the record and the parties' briefs.

Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

combined when one of the companies changes its name or structure to skirt the consequences of prior violations. 49 C.F.R. § 386.73(b).

Invoking this authority, federal regulators suspended a trucking company, Eagle Iron & Metal. When Eagle was suspended, another entity (KP Trucking, LLC) expanded its operations. Regulators viewed KP's expansion as an effort to continue Eagle's operations in order to bypass penalties and start anew on a fresh slate. KP disagrees and petitions for judicial review.[1] We deny the petition.

## 1.    KP emerges when Eagle is suspended.

Trucking companies can operate only when granted operating authority by the Federal Motor Carrier Safety Administration. *See* 49 C.F.R. pt. 385. This authority had been granted to Eagle. But the Safety Administration cited Eagle for safety violations, imposed a penalty, and suspended Eagle's registration. Upon Eagle's suspension, KP quickly filled the void by taking the steps necessary to obtain reinstatement of its operating authority.

KP soon drew its own citations for safety violations. The Safety Administration directed both KP and Eagle to suspend operations and ordered consolidation of the two companies' records, finding that KP had

---

[1]     Regulators also found that another entity, Kenney Balthrop d/b/a KP's Trucking, was used to avoid the suspension and penalties imposed on Eagle. But this finding is not at issue here.

2

continued Eagle's operations under a new identity in order to avoid Eagle's civil penalty, suspension, and poor compliance history. KP challenges this finding.

**2. The Safety Administration had substantial evidence to find that KP was merely continuing Eagle's business for an improper purpose.**

Under the petition for review, we must consider whether KP was merely continuing Eagle's operations for an improper purpose. To consider this issue, we regard the Safety Administration's finding as presumptively valid and will grant KP's petition only if the finding is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by substantial evidence." *Andalex Res., Inc. v. Mine Safety & Health Admin.*, 792 F.3d 1252, 1257 (10th Cir. 2015). To overcome this presumption of validity, KP bears the burden of proof. *Midwest Crane & Rigging, Inc. v. Fed. Motor Carrier Safety Admin.*, 603 F.3d 837, 840 (10th Cir. 2010).

The Safety Administration concluded that KP had acted only to continue Eagle's operations and had expanded for an improper purpose. KP challenges the evidentiary basis for these findings.

**A. Substantial evidence existed for the finding of continuity of Eagle's operations.**

To determine whether KP served merely to continue Eagle's operations, the Safety Administration could consider

3

- the businesses' management structures,

- their asset purchases or transfers and the related title history,

- employee records, and

- any other information related to the businesses' general operations.

49 C.F.R. § 386.73(d). The Safety Administration based its determination in part on the existence of common ownership, finding that one person (Kenney Balthrop) owned KP and had an ownership interest in Eagle. KP does not dispute that Mr. Balthrop is its owner, but does challenge the finding that he had an ownership interest in Eagle. For this finding, the Safety Administration could reasonably rely on two pieces of evidence.

First, Eagle had submitted a form in 2010, stating that Mr. Balthrop was an owner.

OMB No. 2126-0013

**U.S Department of Transportation**
**Federal Motor Carrier**
**Safety Administration**

# MOTOR CARRIER IDENTIFICATION REPORT
## (Application for U.S. DOT NUMBER)

**REASON FOR FILING** (Check Only One)

☐ NEW APPLICATION ☒ BIENNIAL UPDATE OR CHANGES ☐ OUT OF BUSINESS NOTIFICATION ☐ REAPPLICATION (AFTER REVOCATION OF NEW ENTRANT)

| 1. NAME OF MOTOR CARRIER <br> **EAGLE IRON & METAL LLC** | 2. TRADE OR D.B.A. (DOING BUSINESS AS) NAME | |
|---|---|---|

| 3. PRINCIPAL STREET ADDRESS/ROUTE NUMBER <br> 4302 HIGHWAY 29 | 4. CITY <br> MARLOW | 5. MAILING ADDRESS (P O BOX) <br> 4302 HIGHWAY 29 | 6. MAILING CITY <br> MARLOW |
|---|---|---|---|

| 7. STATE/PROVINCE <br> OKLAHOMA | 8. ZIP CODE + 4 <br> 73055 | 9. COLONIA (MEXICO ONLY) | 10. STATE/PROVINCE <br> OKLAHOMA | 11. ZIP CODE+4 <br> 73055 | 12. COLONIA (MEXICO ONLY) |
|---|---|---|---|---|---|

| 13. PRINCIPAL BUSINESS PHONE NUMBER <br> (580) 658-6410 | 14. PRINCIPAL CONTACT CELLULAR PHONE NUMBER <br> (580) 512-7900 | 15. PRINCIPAL BUSINESS FAX NUMBER <br> (580) 658-6411 |
|---|---|---|

| 16. USDOT NO. <br> 1844562 | 17. MC OR MX NO. | 18. DUN & BRADSTREET NO. | 19. IRS/TAX ID NO.    SSN# | 20. INTERNET E-MAIL ADDRESS <br> wes@simplynet.net |
|---|---|---|---|---|

**21. COMPANY OPERATION** (Circle all that apply)

(A) Interstate Carrier   B. Intrastate Hazmat Carrier   C. Intrastate Non-Hazmat Carrier   D. Interstate Shipper   E. Intrastate Shipper   F. Vehicle Registrant Only

**22. CARRIER MILEAGE** (to nearest 10,000 miles for Last Calendar Year)     YEAR

**23. OPERATION CLASSIFICATION** (Circle All that Apply)

| A. Authorized For-Hire | D. Private Passengers (Business) | G. U. S. Mail | J. Local Government |
|---|---|---|---|
| B. Exempt For-Hire | E. Private Passengers (Non-Business) | H. Federal Government | K. Indian Tribe |
| (C) Private Property | F. Migrant | I. State Government | L. Other |

**24. CARGO CLASSIFICATIONS** (Circle All that Apply)

| A. GENERAL FREIGHT | F. LOGS, POLES, BEAMS, LUMBER | J. FRESH PRODUCE | P. GRAIN, FEED, HAY | V. COMMODITIES DRY BULK | BB. CONSTRUCTION |
|---|---|---|---|---|---|
| B. HOUSEHOLD GOODS | G. BUILDING MATERIALS | K. LIQUIDS/GASES | Q. COAL/COKE | W. REFRIGERATED FOOD | CC. WATER WELL |
| C. METAL; SHEETS; COILS; ROLLS | H. MOBILE HOMES | L. INTERMODAL CONT. | R. MEAT | X. BEVERAGES | (DD) OTHER <br> SCRAP METAL |
| D. MOTOR VEHICLES | I. MACHINERY, LARGE OBJECTS | M. PASSENGERS | S. GARBAGE, REFUSE, TRASH | Y. PAPER PRODUCTS | |
| E. DRIVE AWAY/TOWAWAY | | N. OIL FIELD EQUIPMENT | T. U.S. MAIL | Z. UTILITY | |
| | | O. LIVESTOCK | U. CHEMICALS | AA. FARM SUPPLIES | |

**25. HAZARDOUS MATERIALS CARRIED OR SHIPPED** (Circle All that Apply)   C-CARRIED S-SHIPPED B(BULK) - IN CARGO TANKS NB(NON-BULK) - IN PACKAGE

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C | S | A. DIV 1.1 | B | NB | C | S | K. DIV 2.2A (Ammonia) | B NB | C | S | U. DIV 4.2 | B NB | C | S | EE. HRCQ | B NB |
| C | S | B. DIV 1.2 | B | NB | C | S | L. DIV 2.3A | B NB | C | S | V. DIV 4.3 | B NB | C | S | FF. CLASS 8 | B NB |
| C | S | C. DIV 1.3 | B | NB | C | S | M. DIV 2.3B | B NB | C | S | W. DIV 5.1 | B NB | C | S | GG. CLASS 8A | B NB |
| C | S | D. DIV 1.4 | B | NB | C | S | N. DIV 2.3C | B NB | C | S | X. DIV 5.2 | B NB | C | S | HH. CLASS 8B | B NB |
| C | S | E. DIV 1.5 | B | NB | C | S | O. DIV 2.3D | B NB | C | S | Y. DIV 6.2 | B NB | C | S | II. CLASS 9 | B NB |
| C | S | F. DIV 1.6 | B | NB | C | S | P. Class 3 | B NB | C | S | Z. DIV 6.1A | B NB | C | S | JJ. ELEVATED TEMP MAT. | B NB |

## 1. **KENNY BALTHROP, OWNER**

| | Straight Trucks | Truck Tractors | Trailers | Hazmat Cargo Tank Trucks | Hazmat Cargo Tank Trailers | Motor Coach | School Bus | | | Mini-bus | Van | | Limousine | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 1-8 | 9-15 | 16+ | 16+ | 1-8 | 9-15 | 1-8 | 9-15 | 16+ |
| OWNED | | 6 | 6 | | | | | | | | | | | | |
| TERM LEASED | | | | | | | | | | | | | | | |
| TRIP LEASED | | | | | | | | | | | | | | | |

**27. DRIVER INFORMATION**    INTERSTATE    INTRASTATE    TOTAL DRIVERS    TOTAL CDL DRIVERS

| | INTERSTATE | INTRASTATE | TOTAL DRIVERS | TOTAL CDL DRIVERS |
|---|---|---|---|---|
| Within 100-Mile Radius | | | 2 | 2 |
| Beyond 100-Mile Radius | 2 | | | |

**28. IS YOUR U.S. DOT NUMBER REGISTRATION CURRENTLY REVOKED BY THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION?**    Yes ___ No X

If Yes, enter your U.S. DOT Number.

**29. PLEASE ENTER NAME(S) OF SOLE PROPRIETOR(S), OFFICERS OR PARTNERS AND TITLES** (e.g. PRESIDENT, TREASURER, GENERAL PARTNER, LIMITED PARTNER)

1. KENNY BALTHROP, OWNER     2. WES M BALTHROP,
(Please print Name)         (Please print Name)

**30. CERTIFICATION STATEMENT** (to be completed by an authorized official)

I, WES BALTHROP
(Please print Name)

certify that I am familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations. Under penalties of perjury, I declare that the information entered on this report is, to the best of my knowledge and belief, true, correct, and complete.

Signature WES BALTHROP     Date 02/22/2010     Title _____ (Please print)

Form MCS-150 (Rev. 3-24-2005)     Expiration Date: 03/31/2011   0113

Record at 113.

Second, Eagle stated in 2018 that Mr. Balthrop was an owner of Eagle:

| ![logo] EAGLE IRON & METAL<br>U.S. DOT #: 1844562 | | Review Date:<br>09/19/2018 |
| --- | --- | --- |
| **Part C** | | |

The Oklahoma Secretary of State has record of Eagle Iron & Metal DOT# 1844562.

Eagle Iron & Metal DOT# 1844562 owns 7 truck tractors and 7 trailers.

Drivers are paid $150 a load intrastate and up to $500 a load interstate.

Fuel is paid with Amerifuel card issued to drivers. Each card has a unique number and a PIN is required.

Eagle Iron

Eagle Iron



Eagle Iron & Metal DOT# 1844562 was familiar with and has been using the FMCSA website.

FINANCIAL CONDITION:
Eagle Iron & Metal DOT# 1844562 financial condition appears to be good.

OFFICERS:
Wes Balthrop-- owner
Tommy Balthrop-owner
Kenney Balthrop-owner/manager
Jerry Rogers-DOT & Safety director

PRIOR CONTACT:
Compliance Review conducted 10/12/11 resulting in a Conditional safety rating with violations in Part 382, 391, and 395.
Enforcement 12/9/11 Violations 382.305, and 391.51(b) (2), Settlement amount $4,150 case #OK-2012-0005-US0357

Compliance Review conducted 7/19/12 resulting in a Conditional safety rating with violations in Part 382, 390, 391, 392,395, and 396.
Enforcement 8/15/12 Violations 382.301(a), and 391.51(b) (2), Settlement amount $6,390 case # OK-2012-0176-US1239

Compliance Review conducted 4/2/15 resulting in a Non rated review with violations in Part 382, 391, and 396.
Enforcement 8/14/15 Violations 382.301(a), and 382.305(b) (2), Settlement amount $16,470 case #OK-2015-0099-US0357

SHIPPERS/BROKERS:
Sims
CMC

EMERGENCY RELIEF EFFORT:
Eagle Iron & Metal DOT# 1844562 was not involved in any emergency relief efforts within the last 365 days.

PRE-INVESTIGATION:
Prior to the review Eagle Iron & Metal DOT# 1844562 was contacted via phone on 08/22/2018 at 580-255-6400 and spoke to Wes Balthrop. The review was scheduled for 8/28/18. The items needed for compliance review list was emailed (wess@simplynet.net) prior to the review to have prepared.

CDLIS (DRIVER LICENSE) CHECK:
All of Eagle Iron & Metal DOT# 1844562 drivers licenses were checked in CDLIS after arriving at the carrier since they didn't provide a driver list prior to my arrival. All drivers had valid licenses with the proper endorsements.

INVESTIGATION:

PART 382: CONTROLLED SUBSTANCES AND ALCOHOL TESTING
A full review of Eagle Iron & Metal DOT# 1844562 controlled substances and alcohol program was reviewed. Eagle Iron & Metal DOT# 1844562 is currently enrolled in a consortium with J. J. Keller & Associates Inc. I spoke to Christopher Nobbe (920-727-7220 email cnobbe@jjkeller.com), Client Service Specialist I- Driver and Employee Services for J. J. Keller.

Christopher Nobbe sent me a copy of Eagle Iron & Metal DOT# 1844562 driver roster that they provided to J. J. Keller for

*Id.* at 144.

6

In finding that KP was used to continue Eagle's operations, the Safety Administration relied not only on common ownership but also on findings as to the two companies'

- use of the same drivers, vehicles, shippers, telephone numbers, mailing addresses, and email addresses,

- common management, and

- proximity to each another.

KP does not dispute these findings of commonality.

In addition to proximity and commonality in operations, the Safety Administration relied on KP's acquisition of Eagle's assets without any payment. KP insists that it did pay for Eagle's assets, pointing to a contract to buy trucks from Eagle. But in the administrative proceeding, KP never mentioned or presented this contract.

KP seeks to supplement the administrative record with this contract. We deny this request. When we review an agency's decision, we must focus on the administrative record that already exists, not a newly created record. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

In seeking to expand the administrative record, KP relies on Federal Rule of Appellate Procedure 16(b). This rule allows the parties to stipulate to the addition of a document inadvertently omitted from the agency's record. But KP does not suggest that the contract was supposed to be in the administrative record and inadvertently omitted; KP instead asks us to

consider the document even though it was never part of the administrative record. Even if Rule 16(b) were applicable in this situation, KP has not justified expansion of the record with the contract. *See Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626–27 (10th Cir. 1985) (identifying exceptions to the rule against the use of extra-record materials).

If we were to consider the contract, we would be evaluating the factual findings based on evidence that the Safety Administration had no opportunity to consider. We thus deny the motion to supplement the record. *See N.M. Env't Improvement Div. v. Thomas*, 789 F.2d 825, 835–36 (10th Cir. 1986) (declining to review information that the petitioner had not presented during the administrative process).

Even if we were to consider the contract, the Safety Administration could reasonably have found that KP had not paid for the trucks. According to the contract, KP bought two trucks from Eagle on May 23, 2018. The vehicle identification number of one of these trucks was 1FUPCXYB81LG61890. During a compliance review roughly four months later, however, Eagle provided maintenance records for that same truck, suggesting that it was still in Eagle's fleet. Given these records, the Safety Administration could reasonably infer that Eagle had never parted with either truck identified in the contract.

**B.** **Substantial evidence existed for the finding of an improper purpose.**

The Safety Administration found not only a continuity in operations but also an improper purpose, relying primarily on the timing of Eagle's suspension and KP's reinstatement.

In November 2018, the Safety Administration stated that Eagle had an "unsatisfactory" safety record based on numerous violations. Those violations led to civil penalties and an order for Eagle to halt operations. Eagle admitted to some of the violations and entered a settlement agreement, which allowed continuation of operations only if Eagle made installment payments on the civil penalties. After one installment, Eagle stopped paying. As a result, its operations were suspended in May 2019.

Meanwhile, KP twice had its own operating authority suspended for failing to carry liability insurance. The first suspension order came in September 2018, and KP did not make efforts to get reinstated until January 2019—four days before Eagle made its only installment payment. The second insurance-related suspension came in August 2019, after Eagle's operations had been suspended for non-payment of its penalties. This time, however, KP quickly obtained the required insurance and restoration of its operating authority.



Given Eagle's inaction when suspended and assessed civil penalties, the Safety Administration could reasonably regard KP's quick corrective action as a ploy for Eagle to

- continue operations through a newly reinstated KP and

- avoid payment of the previously assessed civil penalties.

KP questions the Safety Administration's inferences from the timing. KP points out that it too was hit with civil penalties, insisting that if Mr. Balthrop's goal was to avoid payment, he would have created a third business entity to start again on a fresh slate.

KP did not raise this argument when petitioning for review by the Safety Administration. And KP's payment of its own penalties does not undermine the Safety Administration's conclusion that KP was operating as a reincarnation of Eagle. A factfinder might have accepted an innocent explanation for the timing. But a factfinder could also have reasonably inferred that Mr. Balthrop had decided to resume operations through the newly reinstated KP to skirt Eagle's civil penalties, but declined to form a third entity when KP was assessed its own civil penalties.

10

\* \* \*

We conclude that the Safety Administration reasonably found that KP was continuing Eagle's operations for an improper purpose, so we deny the petition for judicial review. We also deny KP's motion to supplement the record with the contract to buy Eagle's trucks.

Entered for the Court


Robert E. Bacharach
Circuit Judge

11